Willard McINTOSH, Appellant

v.

Beverly LANDRUM, Appellee.

No. 2012–CA–000161–ME.

Court of Appeals of Kentucky.

Aug. 24, 2012.

Timothy B. Theissen, Brian F. Eviston, Covington, KY, for appellant.

Ruth B. Jackson, Covington, KY, for appellee.

Before CLAYTON, LAMBERT and STUMBO, Judges.

## OPINION

STUMBO, Judge:

In this appeal, Willard McIntosh appeals from two orders of the Kenton Circuit Court requiring him to pay, as part of his child support, amounts for respite care and work-related childcare to Beverly Landrum. He was also ordered to pay a part of Ms. Landrum's attorney fees and court costs. We find that the trial court did not err in awarding Ms. Landrum payments for respite care, work-related childcare, and attorney fees. We therefore affirm.

The parties were married in 1994 and have two children, L.L.M. (Daughter) and I.P.M. (Son).[1] Son is autistic and requires extra care. The parties were divorced on February 8, 2007, and they entered into a detailed separation agreement. They have joint custody, with Ms. Landrum being the primary residential parent. Mr. McIntosh would have parenting time every Wednesday and every other weekend. The parties' total monthly gross income exceeded the child support guidelines set in KRS[2] 403.212. Mr. McIntosh agreed to pay $2,400 in monthly child support for the two children. He also agreed to pay Daughter's private school tuition, Son's therapeutic special needs school tuition, uninsured medical expenses, and extracurricular expenses. Mr. McIntosh also agreed to pay Ms. Landrum $3,100 in maintenance for 36 months.

At the time of the divorce, Mr. McIntosh lived in Cincinnati, Ohio and Ms. Landrum lived in Ft. Mitchell, Kentucky. Ms. Landrum was a stay-at-home mother and Mr. McIntosh worked at the University of Cincinnati making around $23,000 a month. In January of 2011, Mr. McIntosh took a job in Abu Dhabi, United Arab Emirates, making approximately $32,000 a month. Ms. Landrum also began seeking employment when her spousal maintenance ceased, leading her to a job with Pepsi, making $46,000 a year.

On March 22, 2011, Ms. Landrum filed the motions that are the subject matter of this appeal. Part of the reason for Ms.

---

1. The names of minor children will not be used.

2. Kentucky Revised Statutes.

Landrum filing her motions is that when Mr. McIntosh moved to Abu Dhabi, he was unable to exercise his regular parenting time. He was only able to see the children a few times. Because of Son's disability, he requires constant supervision. When Mr. McIntosh stopped regularly exercising his parenting time, it was left up to Ms. Landrum to care for the children 24/7. Her motions requested that when Mr. McIntosh was unable to visit the children, he should pay for her to hire a babysitter so she could have some time off from caring for the children, a.k.a., respite care. She also later requested he pay his share for work-related childcare and her attorney fees.

Right before a hearing on the matter, Mr. McIntosh revealed that he was leaving his position in Abu Dhabi and taking a position in San Antonio, Texas, making approximately $20,000 a month. According to Mr. McIntosh, this relocation will allow him to once again exercise his parenting time on the weekends.

During the hearing, Ms. Landrum testified that she must be at work before the children get up for school and does not return home until around 5 or 6 p.m. This means someone has to get the children up for school, drive them to school,[3] and pick them up after school. Ms. Landrum testified that she relied on her father, other family members, and sometimes actual babysitters to care for the children while she was at work. She testified that she would reimburse her father for gas money whenever she could afford it. In addition, when her father began having medical problems and was unable to care for the children, she would pay her niece $350 a week to care for the children while she was at work. She also introduced an exhibit at the hearing detailing her childcare and transportation expenses.

The trial court ordered Mr. McIntosh to pay 100% of any childcare costs Ms. Landrum incurred when he did not exercise his parenting time. This is what was designated as respite care. It was also made clear by the trial court that this was not an increase in Mr. McIntosh's general child support, but that it was in addition to his child support, similar to work-related childcare expenses. The court also granted Ms. Landrum's request for work-related childcare expenses, requiring Mr. McIntosh to pay 87% of these expenses. The court also awarded Ms. Landrum $3,500 in attorney fees due to the great disparity of income between the two parties. Mr. McIntosh was also required to pay for any mediation sessions and court costs. Mr. McIntosh then filed a motion to alter, amend, or vacate, which was denied. This appeal followed.

■■■ Mr. McIntosh's first argument is that the trial court erred when it awarded respite care because it is not authorized under Kentucky law. "As are most other aspects of domestic relations law, the establishment, modification, and enforcement of child support are prescribed in their general contours by statute and are largely left, within the statutory parameters, to the sound discretion of the trial court." *Van Meter v. Smith,* 14 S.W.3d 569, 572 (Ky.App.2000) (citations omitted). "The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Downing v. Downing,* 45 S.W.3d 449, 454 (Ky.App.2001) (citations omitted).

In the case at hand, the trial court specifically stated that it was not increasing Mr. McIntosh's general child support obligation. The court characterized its award

---

**3.** Both children go to private schools which do not have their own transportation.

of respite care as something similar to work-related childcare.

■ As it currently stands, Ms. Landrum sometimes incurs childcare costs when she is not at work due to Son's disability and his constant need for supervision. She pays for this non work-related childcare. When Mr. McIntosh does not exercise his parenting time, an extra burden is put on Ms. Landrum, one not contemplated by the parties' separation agreement. When Mr. McIntosh exercises his parenting time, Ms. Landrum has time for herself, to "recharge her batteries." It is also time when she does not have to pay for extra childcare.

There are few matters over which the trial court has more discretion than cases involving domestic relations issues. Even after the enactment of the Family Support Act in 1988, our statutory scheme for the establishment and modification of child support, the trial court still retains considerable discretion. However, that discretion is not unlimited. Our Legislature has created general guidelines and presumptions, and the trial court may only deviate from these parameters if it gives appropriate written reasons. As long as the trial court's decision comports with the guidelines, or any deviation is adequately justified in writing, this Court will not disturb the trial court's ruling in this regard.

*Com. ex rel. Marshall v. Marshall,* 15 S.W.3d 396, 400–401 (Ky.App.2000) (citations omitted). We find that the trial court did not abuse its discretion in awarding Ms. Landrum reimbursement for respite care. The trial court specifically and adequately justified this extra expense. When Mr. McIntosh lived in Abu Dhabi, he hardly exercised his parenting time. Mr. McIntosh now lives in Texas and it is reasonable to assume he may miss more parenting time. These missed parenting times cause Ms. Landrum to sometimes have to pay for extra childcare herself during times when she should not have to. These expenses only occur if Mr. McIntosh does not exercise his regular parenting time and Ms. Landrum chooses to hire someone to care for the children during the weekend.

■ Mr. McIntosh's second argument is that the trial court erred when it awarded Ms. Landrum work-related childcare expenses. At the time of the parties' divorce, Ms. Landrum was not working and a provision for work-related childcare expenses was not included in their separation agreement. When Ms. Landrum's maintenance expired, she began working. She had been working for over a year before she requested Mr. McIntosh to pay his share of work-related childcare expenses. Mr. McIntosh argues that there was no evidence that Ms. Landrum actually incurred work-related childcare expenses. He also claims that even if she did incur these expenses, they were only temporary.

KRS 403.211(6) states that "[t]he court shall allocate between the parents, in proportion to their combined monthly adjusted parental gross income, reasonable and necessary child care costs incurred due to employment, job search, or education leading to employment, in addition to the amount ordered under the child support guidelines." This is what the trial court did in this case. The trial court ordered that the parent incurring work-related childcare expenses was to submit proof of the expense within 30 days of incurring the expense to the other parent.

■ Childcare costs may be increased or decreased upon showing circumstances requiring a change. *See Olson v. Olson,* 108 S.W.3d 650 (Ky.App.2003). We find there was sufficient evidence to prove Ms. Landrum was now incurring work-related

childcare expenses. During the hearing in this case, Ms. Landrum's father testified that he usually drove the children to and from school, incurring costs related to gasoline. He also testified that Ms. Landrum would pay him when she could afford it. There was also testimony from Ms. Landrum that she had been paying her niece and another babysitter to care for the children lately due to her father having medical issues. Ms. Landrum also introduced into evidence a worksheet detailing her childcare expenses.

As to Mr. McIntosh's argument that work-related childcare costs were only temporary, we find the issue irrelevant. All Ms. Landrum has to prove is that there has been a change in circumstances requiring the payment of work-related childcare expenses. She has shown this as stated previously. Mr. McIntosh relies primarily on the fact that Ms. Landrum's father had been taking care of the children prior to his medical issues. Mr. McIntosh claims that once the medical issues are resolved, the grandfather can begin taking care of the children again, thereby lessening the childcare cost. While the children's grandfather had been providing work-related childcare, there is no guarantee that once his medical condition improves he will be able to take over caring for the children all the time while Ms. Landrum is at work. As of the date of the hearing, he was able to help out one or two days at a time. Regardless, he was still incurring costs related to gasoline that Ms. Landrum tried to pay back. Ms. Landrum has been and is incurring work-related childcare costs and according to KRS 403.211(6), Mr. McIntosh must pay his share of those costs, temporary or not.

Mr. McIntosh's final argument is that the trial court erred when it awarded Ms. Landrum $3,500 in attorney fees. "The court from time to time after considering the financial resources of both parties may order a party to pay a reasonable amount for the cost to the other party of maintaining or defending any proceeding under this chapter and for attorney's fees[.]" KRS 403.220. "It is well settled that an allocation of attorneys fees in a divorce action is entirely within the trial court's discretion. The only requirement is that there be a disparity in the financial resources of the parties." *Glidewell v. Glidewell,* 859 S.W.2d 675, 679 (Ky.App. 1993) (citations omitted). The trial court found that while working in Abu Dhabi, Mr. McIntosh made approximately $450,000. It also found that he would be making about $250,000 a year at his new job in Texas. Ms. Landrum, on the other hand, was making approximately $46,000 a year working for Pepsi. We find that the trial court did not abuse its discretion in awarding some attorney fees to Ms. Landrum due to the disparity of the parties' incomes.

For the foregoing reasons we affirm the orders of the Kenton Circuit Court.

CLAYTON, Judge, Concurs.

LAMBERT, Judge, Dissents and Files Separate Opinion.

LAMBERT, Judge, Dissenting.

I respectfully dissent. I would remand the above styled matter back to the trial court and direct that it conduct a *Downing* type analysis of the income and expenses of all parties. *Downing v. Downing,* 45 S.W.3d 449, 454 (Ky.App.2001).