MAZE, JUDGE:
Marc Irwin Cobane (Marc) appeals from findings of fact, conclusions of law, and a decree of the Jessamine Family Court dissolving his marriage to Laurie Lynn Cobane (Laurie). Marc argues that the trial court erred in its classification of his non-marital interests in certain property, its valuation of his interest in a family business, and in its division of marital property. We conclude that the trial court erred by classifying as marital the encumbered balance in Marc's Employee Transition Program account. Likewise, the trial court erred by including those funds in its calculation of the marital estate and equalization payment due to Laurie. However, the trial court did not clearly err in classifying and valuing Marc's other interests, and the court did not abuse its discretion in its division of marital property with respect to those assets. Hence, we affirm in part, reverse in part, and remand for entry of a new judgment.
I. Facts and Procedural History
Marc and Laurie were married on July 17, 2006, and separated in March of 2015. There was one minor child born of the marriage. Laurie filed a petition for dissolution of the marriage on April 30, 2015. On September 2, 2016, the trial court entered findings of fact, conclusions of law, and a decree of dissolution of the marriage. Marc filed a motion to alter, amend or vacate with respect to several contested issues. The trial court denied the motion on November 3, 2016. This appeal followed.
*676 Additional facts will be set forth below as necessary.
II. Standard of Review
Marc raises five issues relating to the trial court's classification, valuation, and division of marital property. Classifying property as marital or non-marital "involves an application of the statutory framework for equitable distribution of property upon divorce and therefore constitutes a question of law...." Holman v. Holman , 84 S.W.3d 903, 905 (Ky. 2002). Accordingly, we review trial court rulings regarding the classification of marital property de novo. Young v. Young , 314 S.W.3d 306, 308 (Ky. App. 2010). Once classified, the division of marital property is within the sound discretion of the trial court. McGregor v. McGregor , 334 S.W.3d 113, 119 (Ky. App. 2011). "We review a trial court's determinations of value and division of marital assets for abuse of discretion." Young , 314 S.W.3d at 308 (citing Armstrong v. Armstrong , 34 S.W.3d 83, 87 (Ky. App. 2000) ).
III. Classification of ETP Account
Marc first argues that the trial court improperly classified as marital the encumbered funds in his employee incentive program. Throughout the marriage, Marc worked as a financial advisor. While Marc was initially with Fifth Third Bank, he began working for UBS Financial Services, Inc. (UBS) in late 2010.
Since most of Marc's income comes from commissions and the industry requires a period of time for a financial advisor to build up a client list, UBS placed Marc in its Employee Transition Program (ETP). In pertinent part, the ETP consists of five forgivable promissory notes totaling $967,243.00. The loans mature over a period of nine years and are forgiven at intervals during that period. When a portion of the ETP debt is forgiven, Marc's paycheck shows the forgiven amount as income to him. But if Marc leaves his job prior to the end of the nine-year period, he will be required to pay back any loans that have not been forgiven. Marc testified that the outstanding loan balance on the ETP was $426,627.49 as of the date of the hearing in this action.
Marc argues that the outstanding portion of the ETP debt is unearned income which vests only after the entry of the decree. Consequently, he maintains that portion of the ETP is entirely non-marital. However, Laurie argues that the ETP payments were a bonus which UBS paid to Marc as an incentive to work there. Laurie agrees that the ETP payments are not fully vested until Marc completes the full nine-year period. But she contends that the entire amount should be treated as marital to the extent that it vested during the marriage.
The trial court agreed with Laurie, finding that 65% of the remaining encumbered ETP funds are marital, and 35% are Marc's non-marital funds, as they will not be forgiven until after the entry of the decree.[1] In accord with this finding, the trial court evenly divided the remaining payments. Marc would receive 15% of the marital interest, which when added to his non-marital interest, would result in 50% of the payments. The trial court directed Marc to forward 50% of any net ETP forgiveness (less payment of required taxes) within five business days after each *677 loan forgiveness becomes effective. In a post-judgment order, the court recognized that Marc is liable for interest on the outstanding balances. Consequently, the court directed that any such interest be deducted from the divisible portion of the ETP accounts as it is forgiven.
On appeal, Marc correctly notes that benefits which replace future earnings are non-marital property. Holman , 84 S.W.3d at 910. Since the ETP funds are not taxable as income until the loans are forgiven, Marc argues that the remaining sums of the ETP constitute future income. As a result, he maintains that those amounts must be considered as non-marital assets.
In response, Laurie cites to the recent case of Dotson v. Dotson , 523 S.W.3d 441 (Ky. App. 2017), which holds that unvested incentive benefits may be regarded as a form of deferred compensation earned during the marriage, even if the right to receive that benefit may never be exercised. Id. at 445. In Dotson , the spouse participated in an incentive program through her employer, under which she was paid annually. The award was paid in the form of Restricted Performance Unit (RPU) stocks. The RPU stocks were not immediately available to the employee, but vested over a period of five years. The RPU stocks would be forfeited if the employee did not remain with the employer for the full five-year period. However, the employee had the right to enforce the plan if it was not administered according to the company's agreement. Id. at 445. The trial court found, and a panel of this Court agreed, that the spouse's interest in the unvested RPU stocks were more than merely speculative. Rather, the Court found that they represented payment for work performed during the course of the marriage. As a result, the Court held that the stock options were subject to division as marital property even though the right to exercise those options may never vest. Id. at 444-45.
The ETP funds are a unique asset which defy simple classification. However, we agree with Marc that the ETP funds are not comparable to the RPU stocks in Dotson . Although Marc had immediate access to the funds in the ETP accounts, they were fully encumbered by the outstanding balance of the loans. Marc's manager, Matt Fresca, testified that the proceeds of the loans were not considered the employee's money until forgiven. In addition, Marc was required to make payments on any withdrawals from the accounts prior to forgiveness of the loan. Furthermore, Marc paid monthly interest on the balance of the loans, but the funds were not taxable as income until the year the underlying loans were forgiven.
The ETP funds are similar to the RPU stocks in Dotson to the extent that both were provided as incentives to reward the employee's long-term commitment to the employer. In the case of an employee benefit, the operative factor in determining whether benefits are marital or non-marital property is not whether vesting has occurred. McGinnis v. McGinnis , 920 S.W.2d 68, 70 (Ky. App. 1995). Rather, the test is whether the spouse's right to participate in the plan was earned during the marriage. Id. If the benefits are a mere expectancy, then the asset is non-marital; but, if the employee's right to future participation in the plan accrued during the marriage, then it is a marital asset even though the employee's right to receive those benefits does not arise until after the marriage. Id. at 71.
But unlike the RPU stocks in Dotson , Marc's unrestricted right to the ETP funds does not accrue until the loans are forgiven. Any value of the ETP funds, marital or otherwise, is offset by the outstanding *678 balance of the loans against them. Marc cannot seek to require UBS to forgive a portion of the promissory note until he works for UBS for the specified intervals of time. Prior to those points in time, the ETP funds are merely loan proceeds and subject to repayment.
Thus, Marc's right to forgiveness of the ETP loans does not arise until after the entry of the decree of dissolution. In this respect, the funds are more akin to unearned future income than an unvested benefit. Consequently, we must conclude that the trial court erred by classifying the encumbered ETP funds as marital and subject to division.
IV. Issues Relating to Cobane Farms, LLC
Next, Marc raises two issues relating to his interest in Cobane Farms, LLC. Prior to the marriage, in 2003, Marc purchased a 62-acre tract of agricultural property in Washington County. In 2010, Marc and his brother purchased two adjoining tracts. Also during the marriage, Marc and his parents purchased three other adjoining tracts.
In 2011, Marc and his father, Irwin Cobane, purchased a 309.66 acre tract near Carlisle, in Nicholas County, Kentucky (the Gravel Road property). Marc used funds from his UBS ETP account to finance his portion of the purchase. In 2012, all of the Washington County property was sold. Marc received approximately $100,000 in proceeds from that sale, which he deposited back into his UBS ETP account to replenish the funds which he previously withdrew.
Also in 2011, Marc and Irwin filed Articles of Incorporation establishing Cobane Farms, LLC. Shortly thereafter, they each transferred interests to various family members, and there were additional transfers of interests during the following years. At the time of the hearing in this case, Marc held a 45.675% interest in the LLC. His parents own 50.325%, and Marc's two siblings each own 2%. The Gravel Road property is the primary asset of Cobane Farms, LLC. However, Marc and Irwin did not transfer ownership of that property to the LLC until 2015.
A. Discount in the Valuation of Marc's interest in Cobane Farms, LLC
Mark first argues that the trial court erred when it declined to recognize a discount in the value of his interest in Cobane Farms, LLC, based upon his minority ownership in the LLC. Marc's expert, Diana Hughes, C.P.A., submitted a report calculating the value of the LLC based upon the value of its assets. Hughes concluded that its total assets were worth $1,069,450.00, and Marc's share of that value would be worth $488,471.00. But from that amount, Hughes subtracted a loan which the LLC owed to Marc, and an additional 30% discount due to Marc's non-controlling interest in the LLC. Based on these calculations, Hughes valued Marc's interest to be worth approximately $251,000.00.
Laurie submitted an appraisal of the Gravel Road property consistent with Hughes's valuation. But Laurie did not submit any expert testimony regarding the value of Marc's interest in the LLC. The trial court accepted Hughes's valuation of the assets of the LLC, but declined to credit Marc for either the outstanding loan or the 30% minority discount.[2]
*679 With respect to the minority discount, the trial court noted that Marc had reduced his interest from 50% by voluntarily transferring shares to his siblings. He charged his siblings less than what he paid for his initial, equal interest, and he did not charge a premium for reducing his interest to less than 50%. The trial court also pointed out that Marc and Irwin transferred the Gravel Road property to the LLC on the day after Laurie filed the petition for dissolution. Based upon these factors, the trial court concluded that Marc's interest should not be discounted from his share of the value of the assets of Cobane Farms, LLC.
Marc contends that the trial court abused its discretion by disregarding Hughes's uncontested conclusion to apply a minority discount. Hughes's report notes that a minority interest is typically discounted, as it directly affects the fair market value and marketability of that discount. In this case, the operating agreement of Cobane Farms, LLC requires a vote of at least 51% of the members' interests for management decisions. Given Marc's lack of a controlling interest, Hughes recommended that the value of his share be discounted to reflect its diminished marketability. Her report also discussed several published studies on minority interests and noted that the discount usually ranges from 22% to 40%. In the absence of any contrary expert testimony, Marc argues that the trial court erred by rejecting Hughes's application of a minority discount of 30%.
We agree with Marc that a marital business must be valued based upon a variety of factors, including the value of its assets and liabilities, earning potential, and marketable goodwill. Gaskill v. Robbins , 282 S.W.3d 306, 311 (Ky. 2009). Given the complexity of this analysis, expert testimony is usually necessary to arrive at a fair market value of a business. Id. Furthermore, this Court has held that a trial court may include a discount for lack of control and marketability in determining the value of a minority interest. In Monaco v. Stewart , No. 2009-CA-001193-MR, 2011 WL 1330851 (Ky. App. 2011), this Court affirmed a trial court's valuation including a discount for lack of control and marketability. But in Monaco , both parties' experts applied discounts for these factors, although they disagreed what discount was appropriate.
Likewise, Marc cites to cases from other jurisdictions which consistently approve the application of a marketability discount to calculate the fair market value of a spouse's minority interest in an ongoing business enterprise. See Crismon v. Crismon , 72 Ark. App. 116, 119, 34 S.W.3d 763, 765-66 (2000) (trial court did not err by accepting a marketability discount to valuation of spouse's partnership interest); Trost-Steffen v. Steffen , 772 N.E.2d 500, 508 (Ind. Ct. App. 2002) (affirmed trial court's valuation of stock including a minority interest and marketability discount). Rattee v. Rattee , 146 N.H. 44, 50, 767 A.2d 415, 420 (2001) (trial court did not abuse its discretion by applying a minority discount to spouse's interest in a closely-held family business); Priebe v. Priebe , 1996 S.D. 136, ¶ 15, 556 N.W.2d 78, 81 (S.D. 1996) ;[3] and *680 Verholek v. Verholek , 1999 Pa. Super 282, ¶ 10, 741 A.2d 792, 796 (1999). Nevertheless, the common thread in all of these cases is that the determination of whether to apply a minority discount lies within the discretion of the trial court based upon the facts of the particular case. Priebe , 556 N.W.2d at 82.
In the current case, Hughes noted that the Gravel Road property is the single largest asset of Cobane Farms, LLC. Hughes applied a cost approach, based upon the appraisal of the land, buildings, livestock, and other property owned by the LLC. Her report does not discuss any income, earning potential, or marketable goodwill which would factor into the valuation of the LLC as a whole. Rather, Hughes valued the Cobane Farms, LLC based upon the value of its assets, rather than as a business enterprise.
Marc disputes the factors cited by the trial court against applying a minority discount to his interest in the LLC. He states that his initial interest in the LLC was never a controlling interest, but an equal interest with his father, Irwin. Thus, he maintains that there was no need for a premium when he transferred an interest to his brother. In addition, Marc asserts that the Gravel Road property had been listed on Cobane Farms, LLC's balance sheets since 2011. He states that the failure to transfer the property to the LLC until 2015 was merely an oversight by the LLC's attorney, and was not an effort to reduce the marital value of the property. Lastly, Marc also argues that the trial court erred by rejecting Hughes's conclusion that a minority discount is appropriate because Laurie did not offer any contrary evidence.
Based on the conclusions in Hughes's report, the trial court would have been well within its discretion to apply a minority discount to the value of Marc's interest in Cobane Farms, LLC. However, we cannot find that the evidence compelled that result. The trial court gave specific reasons for its decision excluding the discount in this case, and we conclude that those considerations were sufficient to weigh against the application of the discount to Marc's interest in Cobane Farms, LLC.
Most notably, the very late transfer of the Gravel Road property to the LLC has the effect of diminishing the marital interest in the property with no corresponding transfer of value to the marital estate. While Marc may not have intended to diminish the marital estate by effecting the transfer when he did, that was clearly the result. The application of an additional minority discount to Marc's interest in Cobane Farms, LLC would only serve to further diminish the value of the marital estate to Laurie's detriment. Under the circumstances, we cannot find that the evidence required the trial court to apply a minority discount to its valuation of Marc's interest in the LLC.
B. Non-marital interest in Cobane Farms, LLC
Second, Marc claims a non-marital share in his interest in Cobane Farms, LLC. In particular, he claims to have traced the proceeds from the sale of the 62-acre tract in Washington County into the purchase of the Gravel Road property. Marc argues that he presented substantial evidence tracing that interest, and that the trial court erred by finding that he failed to meet his burden of proof on this issue.
In Maclean v. Middleton , 419 S.W.3d 755 (Ky. App. 2014), this Court addressed the concept of tracing, as well as the standard of proof for tracing a non-marital contribution to a marital asset.
*681 The concept of "tracing" is not expressly created by statute, but it is strongly implied by the presumptions created in KRS[4 ] 403.190. As previously noted, all property acquired during the course of the marriage is presumed to be marital unless it can be shown to have originated in one of the excepted ways outlined in KRS 403.190(2). A party claiming that property acquired during the marriage is other than marital property bears the burden of proof. Essentially, the tracing requirement simply means that "[w]hen the original property claimed to be nonmarital is no longer owned, the nonmarital claimant must trace the previously owned property into a presently owned specific asset." 15 Graham & Keller, Kentucky Practice, Domestic Relations Law , § 15.10 at 512 (2nd ed. 2000).
If the claimant does so, then the trial court assigns the specific property, or an interest in the specific property, to the claimant as his or her non-marital property. On the other hand, a claimant cannot meet the tracing requirement simply by showing that he or she brought non-marital property into the marriage without also showing that he or she has spent his or her non-marital assets in a traceable manner during the marriage. Under such circumstances, the trial court will not assign the property to the claimant as non-marital property, but it may consider non-marital contribution as a factor when it makes a just division of the parties' marital property. See Chenault v. Chenault , 799 S.W.2d 575, 578-79 (Ky. 1990). See also Brunson v. Brunson , 569 S.W.2d 173, 176 (Ky. App. 1978) ; Angel v. Angel , 562 S.W.2d 661, 664-65 (Ky. App. 1978).
....
In Chenault, supra , the Kentucky Supreme Court recognized that tracing to a mathematical certainty is not always possible, noting that: "[w]hile such precise requirements for nonmarital asset-tracing may be appropriate for skilled business persons who maintain comprehensive records of their financial affairs, such may not be appropriate for persons of lesser business skills or persons who are imprecise in their record-keeping abilities." 799 S.W.2d at 578. As a result, the Chenault Court held that testimony alone may be sufficient to satisfy the tracing requirement.
However, in Terwilliger v. Terwilliger , 64 S.W.3d 816 (Ky. 2002), the Court has held that, while Chenault relaxed the more draconian requirements for tracing, it did not do away with the tracing requirements altogether. Id. at 821. Where the party claiming the non-marital interest is a skilled business person with extensive record keeping experience, the courts may be justified in requiring documentation to trace non-marital assets into marital property. Id.
Id. at 766-67.
In this case, the trial court found that Marc established a non-marital claim to a portion of the proceeds from the sale of the Washington County property. In 2003, Marc purchased the 62-acre tract in Washington County for $58,500.00, with $11,827.00 down. In 2012, Marc received $103,426.52 for the sale of the 62-acre tract in Washington County. The trial court found that 38% of the equity in those proceeds ($39,378.24) is non-marital, and 62% of the equity ($64,048.28) is marital.
However, the question is whether Marc traced that non-marital interest specifically into Cobane Farms, LLC. As discussed above, Marc testified that he used a loan from the ETP funds for the purchase of the Gravel Road property, and he repaid *682 that loan with the proceeds from the sale of the Washington County property. Furthermore, the Gravel Road property was not formally transferred to Cobane Farms, LLC until 2015. Finally, the trial court pointed out that Marc works as a financial advisor and is closely involved with a number of other business interests. For these reasons, the court found no excuse for Marc's failure to provide full documentation tracing his non-marital interest into the LLC.
At most, Marc may have exchanged the non-marital sale proceeds with the marital ETP funds that he used to purchase the Gravel Road property. However, Marc and Irwin purchased that property as individuals, and only later transferred title to the LLC, on the day after the filing of the petition for dissolution of the marriage. Even overlooking the untimeliness of that transfer, that later conveyance had the effect of diluting and co-mingling any non-marital interest to which Marc may have initially been entitled. We conclude that the trial court did not clearly err in finding that Marc failed to meet his burden of tracing his non-marital interest to Cobane Farms, LLC.
V. Calculation of non-marital interest in Marc's 401k, IRA, and life insurance policy
Marc next argues that the trial court erred in calculating his non-marital interest in three accounts: a 401k account managed by UBS; a Roth IRA account; and the cash value of a whole life insurance policy. The trial court found that Marc had made significant contributions to each of these accounts prior to the marriage. However, the court did not find that the increase in the value of these accounts was attributable to Marc's non-marital contribution. Marc argues that the trial court erred in calculating his non-marital contribution to the 401k. Marc further argues that the trial court clearly erred in finding that he failed to establish that the increase in value of the 401k, the IRA, and the insurance was attributable to his non-marital contributions.
When property is acquired through a combination of marital and non-marital funds, the trial court must first determine the parties' separate non-marital and marital interests in the property based on evidence of the source of those funds. Smith v. Smith , 235 S.W.3d 1, 5 (Ky. App. 2006) (citing Travis v. Travis , 59 S.W.3d 904, 909 (Ky. 2001) ). If a piece of mixed-status property increases in value during the marriage, the court must then determine from the evidence why the increase in value occurred. Id.
"[W]here the value of [non-marital] property increases after marriage due to general economic conditions, such increase is not marital property, but the opposite is true when the increase in value is a result of the joint efforts of the parties." KRS [403].190(3), however, creates a presumption that any such increase in value is marital property, and, therefore, a party asserting that he or she should receive appreciation upon a nonmarital contribution as his or her nonmarital property carries the burden of proving the portion of the increase in value attributable to the nonmarital contribution. By virtue of the KRS 403.190(3) presumption, the failure to do so will result in the increase being characterized as marital property.
Travis , 59 S.W.3d at 910-11, (quoting Goderwis v. Goderwis , 780 S.W.2d 39, 40 (Ky. 1989)) (footnotes omitted).
In this case, the parties agree on the evidence regarding each of the accounts at issue. First, Marc contributed to a 401k retirement account through Fifth Third Bank. In 2011, he transferred the assets of *683 that account ($260,396.00) to a new 401K account with UBS. The parties stipulated that the UBS 401k account has a current value of $363,205.90. Marc presented evidence that his Fifth-Third 401k had a balance of 78,280.59 on March 15, 2007, which was nine months after the marriage. Since there was no evidence of the value of the 401k on the date of the marriage, the trial court found that Marc's non-marital contribution to the 401k was $70,000.00.
Second, Marc has a Roth IRA that has a current stipulated value of $67,980.07. Marc presented documentation showing that the account had a value of $6,243.47 on December 31, 2005, and a value of $5,079.77 on December 31, 2006. The trial court found that Marc's non-marital share of the IRA is $5,707.85 based on the date of the marriage.
And third, Marc has a Variable Life Insurance Policy through Northwestern Mutual with a stipulated value of $11,602.47. Marc presented documentation showing that the policy had a cash value of $1,567.22 on December 31, 2005, and $2,502.14 on November 19, 2006. The trial court found that Marc's non-marital share of the policy is $2,107.68 based on the date of the marriage.
As an initial matter, Marc takes issue with the trial court's valuation of his non-marital contribution to his 401k account, valuing it $8,280.59 less than the amount shown on his documentation. But as the trial court noted, that document was dated some nine months after the date of the marriage. And unlike the other accounts, Marc does not point to any evidence indicating the account's value prior to the marriage. While the trial court's valuation was likely an estimate, Marc does not identify any flaws which would render the trial court's reasoning incorrect. Therefore, we cannot say that the trial court clearly erred in calculating Marc's non-marital contribution to the 401k.
Marc primarily argues that the trial court should have found that the increase in the values of these accounts was attributable to his non-marital contributions. He contends that the appreciation in these accounts is entirely passive and in no way attributable to the marriage. At the hearing, Marc attributed 7% growth to the 401k and the life insurance policy, and 8% to the IRA, each compounded annually. However, Laurie objected to the spreadsheet which he prepared based upon these calculations, noting that the numbers did not match the other documentation regarding these accounts. Consequently, the trial court admitted the spreadsheet only as indicative of Marc's position. The trial court further noted that Marc did not present any evidence as to the actual growth of these accounts during the marriage, except for the beginning and ending numbers. In the absence of such evidence, the court stated that it could not find any portion of the increase in the values of these accounts were attributable to Marc's non-marital contributions.
Marc argues that his testimony alone was sufficient to meet his burden of proof on this issue. We disagree. Marc merely testified to the average growth of these accounts between 2006 and 2016. He did not present any evidence of the effect of his marital contributions to these accounts in this period. Likewise, there was no evidence showing the effect of market fluctuations on the value of these respective contributions. Under the circumstances, we conclude that the trial court did not clearly err in finding that Marc failed to rebut the presumption that the increase in the value of Marc's non-marital contributions are marital property.
*684 VI. Division of marital property/calculation of equalization payment.
Finally, Marc takes issue with the trial court's division of marital property, particularly with regard to the marital portion of the ETP account, as well as the inclusion of the encumbered portion of that account in calculating the equalization payment to Laurie. After the trial court allocates the non-marital property to each party, KRS 403.190(1) directs the court to divide the marital assets in "just proportions," considering all relevant factors including: (a) contribution of each spouse to acquisition of the marital property, including contribution of a spouse as homemaker; (b) value of the property set apart to each spouse; (c) duration of the marriage; and (d) economic circumstances of each spouse when the division of property is to become effective. However, the statute does not specify how much weight should be given to each factor. Furthermore, a "just" division is not necessarily an equal division. Stipp v. St. Charles , 291 S.W.3d 720, 726 (Ky. App. 2009), and Lawson v. Lawson , 228 S.W.3d 18, 21 (Ky. App. 2007). And as noted above, the trial court has broad discretion to divide marital assets, and its determination of what constitutes a just division will not be disturbed absent an abuse of that discretion. Hempel v. Hempel , 380 S.W.3d 549, 553 (Ky. App. 2012).
Both parties in this case agreed to an equal division of marital assets, with the contested issue being whether certain assets were marital or non-marital. In Part III above, we concluded that the trial court erred in classifying the encumbered ETP funds as marital. We also noted that any value of those funds is offset by the amount of the outstanding loans. Consequently, we must also find that the trial court erred by including the $426,627.49 of encumbered ETP funds in its calculation of the total marital estate. Since the trial court's calculation of the equalization payment included those funds, we must also set aside that portion of the judgment. Therefore, we remand this portion of the judgment for a recalculation of the division of marital assets and of any payment necessary to equalize the division of assets.
Accordingly, we affirm the judgment of the Jessamine Family Court, in part, and remand for entry of a new judgment as set forth in this opinion.
ALL CONCUR.

The trial court noted that the ETP loans are forgiven over a 108-month period, with 70 of those months occurring prior to the entry of the Decree and 38 months after. Treating the ETP funds and the forgiveness period as a whole, the court found that approximately 65% of the loans were forgiven during the marriage, and 35% would be forgiven after the marriage.

Hughes's valuation credited Marc for a $130,198.00 debt which is shown on the LLC's books as owed to him. The trial court found that there was no documentation or testimony for this debt, and, consequently, declined to credit that amount against the value of Marc's interest in the LLC. Marc does not appeal from this finding.

Priebe cites additional authority authorizing the application of a minority discount. Money v. Money , 852 P.2d 1158, 1161-62 (Alaska 1993) ; Hayes v. Hayes , 756 P.2d 298, 300 (Alaska 1988) ; Bowen v. Bowen , 96 N.J. 36, 473 A.2d 73, 81-82 (N.J. 1984) ; Morgan v. Morgan , 795 P.2d 684, 691 (Utah App. 1990) ; Arneson v. Arneson , 120 Wis.2d 236, 355 N.W.2d 16, 22 (Wis. App. 1984) ; In re Marriage of Reiling , 66 Or. App. 284, 673 P.2d 1360, 1364 (1983) ; In re Marriage of Jorgensen , 180 Mont. 294, 590 P.2d 606, 610 (1979) ; and Cross v. Cross , 586 P.2d 547, 549 (Wyo. 1978).

Kentucky Revised Statutes.