RENDERED: JULY 12, 2024; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2023-CA-0279-MR
AND
NO. 2023-CA-0282-MR

MICHAEL ANTHONY MILLINER      APPELLANT/CROSS-APPELLEE

v.      APPEAL AND CROSS-APPEAL FROM
BULLITT CIRCUIT COURT
HONORABLE MONICA K. MEREDITH, JUDGE
ACTION NO. 20-CI-00449

MARY ALLISON MILLINER      APPELLEE/CROSS-APPELLANT

OPINION AND ORDER
REVERSING AND REMANDING ON DIRECT APPEAL
AND AFFIRMING ON CROSS-APPEAL

** ** ** ** **

BEFORE: COMBS, LAMBERT, AND McNEILL, JUDGES.

LAMBERT, JUDGE: Michael Anthony Milliner (Michael) has appealed from the orders of the Bullitt Family Court awarding his interest in the marital residence to his former wife, Mary Allison Milliner (Allison). Allison has filed a protective cross-appeal seeking a retrial of her maintenance claim in the event Michael is

successful on his appeal. We reverse on Michael's direct appeal and affirm on Allison's cross-appeal.

Michael and Allison were married on March 10, 2007, in Bullitt County, Kentucky. One child, a daughter, was born of the marriage in 2008. The couple separated in February 2019, and Michael filed a petition to dissolve the marriage in June 2020. At that time, Michael was 43 years old and worked as a maintenance technician for UPS. Allison was 49 years old and worked part-time as a dental hygienist. In addition to dissolving the marriage, Michael sought joint custody of the child, an assigned parenting schedule, restoration of non-marital property, an equitable division of marital property, and a just assignment of marital debts. In her answer, Allison sought joint custody of the child with limited visitation for Michael, child support, and an award of maintenance.

Michael filed a preliminary verified disclosure statement indicating that he had a gross monthly income from UPS of $5,926.00. He indicated that the marital residence on Dublin Circle in Louisville (Bullitt County) had a fair market value of $208,090.00 as of June 15, 2020, and that there was no mortgage on the property. A general warranty deed attached to the disclosure indicated that he, Allison, and Allison's father, Ron Leslie, had purchased the property in 2013 for $172,000.00. He also claimed two other properties as non-marital as they were gifted to him. In her preliminary verified disclosure statement, Allison stated that

she earned a gross monthly income of $948.89 through her employment with Dr. Gregory Cecil. She also included a monthly expenses worksheet calculating her total monthly expenses to be $5,192.14, which included a $600.00 mortgage payment to Mr. Leslie.

After holding a hearing in September 2020, the court entered a *pendente lite* order that the parties were to share joint custody of the child and to have equally shared parenting time. The court also appointed a guardian *ad litem* (GAL) to represent the child's interests. The parties continued to litigate custody issues, but as these issues are not relevant to these appeals, we shall not address them unless necessary for clarity.

In October of that year, Allison moved the court for an award of temporary maintenance and child support. Through her employment as a dental hygienist, she earned a gross income of $2,288.00 per month.[1] Her annual gross income in 2019 was $27,456.00, while Michael's was $79,968.00. She stated that after Michael left the marital residence, he stopped assisting in paying the monthly bills, and that it was not possible for her to do so and pay for the child's needs (including braces) on her salary. Allison included an affidavit to support the motion. She filed an amended expenses worksheet calculating her monthly

---

[1] This amount is greater than the amount Allison listed in her preliminary financial disclosure statement.

expenses to be $3,442.76, which again included a $600.00 mortgage payment to Mr. Leslie.

The family court held a hearing on March 23, 2021, where it heard testimony regarding child support and temporary maintenance. Allison testified that she had worked as a dental hygienist for Dr. Cecil for 16 or 17 years. She worked three days per week for 18 to 22 hours, depending on the patient load, and she earned $29.50 per hour. In 2019, she earned gross wages of $27,462.00. Michael stopped providing help with the bills, except the cell phone bill, in July 2020, when he froze the joint accounts. Her monthly bills totaled around $3,400.00. The $600.00 mortgage she listed on the disclosure was a payment to her father, Mr. Leslie, for the marital residence (she had not been paying this during the litigation). Mr. Leslie had paid for the marital residence, and she and Michael were supposed to pay him back. Allison stated that she needed help to pay her bills (both household and for the child). Mr. Leslie had been helping her, and she had been using credit cards. Her daughter's extra-curricular activities, as well as her own work on the PTA board, prevented Allison from working in another place. In addition, Allison testified that when they got married and had a child, she and Michael had agreed that she would only work three days per week so that she could take care of and transport the child.

At the conclusion of the testimony, Allison requested temporary maintenance and child support. Michael objected to her motion for temporary maintenance, noting that "things change" once a couple separates and that she no longer needed to work on a part-time basis. He did not dispute that he owed her child support. He requested that the court impute her income at 40 hours per week or at a minimum impute additional income to her at minimum wage for 20 hours. The family court took the motions under submission and scheduled a trial date for May of that year.

In an order entered March 25, 2021, the court ordered Michael to pay Allison $562.31 per month in child support beginning April 5 of that year. It ordered Michael to pay the $2,811.55 arrearage that had accumulated since October 2021 via a lump sum payment. The court provided its reasoning as follows:

> So that the parties may understand the Court's perception going forward to a final resolution of this action, the Court notes that it is persuaded that [Allison] chooses to be underemployed and in its calculation imputes to her wages in the amount of $4,524.00 per month calculated by taking her hourly rate of $29.00 and multiplying by thirty-six (36) hours which is the federal minimum for full-time employment.

The court attached a worksheet setting forth its calculations. The parties were to split all uninsured health expenses for the child based upon their respective

-5-

percentages of adjusted parental gross income (56.7% for Michael and 43.3% for Allison).

The court went on to deny Allison's motion for temporary maintenance, concluding that she had failed to meet the burden set forth in Kentucky Revised Statutes (KRS) 403.200 to provide "sufficient reliable information" to support the motion. The court noted:

> The Verified Financial Disclosure filed by [Allison] is inconsistent with the testimony offered at the hearing of the motion, the motion itself fails to comply with the applicable Family Court Rules of Practice and Procedure, statements of Counsel in Motions are argument not evidence. [Allison] did not offer substantive testimony or evidence at the hearing of the motion from which the Court could find in her favor.

The court concluded that maintenance could be addressed at the trial and was "subject to a different outcome based upon the distribution of marital property and other considerations."

In her trial memorandum, Allison stated that she was seeking rehabilitative maintenance in the amount of $1,000.00 per month. She needed financial support until she could readjust her lifestyle and establish herself financially. Regarding the marital residence, Allison stated that Mr. Leslie paid the $172,000.00 purchase price, that he was listed as a co-owner on the deed, and that he was owed $600.00 per month as repayment. However, she stated that the parties had never reduced this loan to writing. In addition to maintenance, Allison

asked the court to award her the marital residence so that she could live there with the child. She noted that Michael owned non-marital property on Beechland Road in Louisville that had been gifted to him as well as property near Nolin Lake. While she did not know the exact value of the properties, she believed that "it would be an equitable trade if he keeps his property and she keeps the marital residence."

In his trial memorandum, Michael addressed both maintenance and the division of property. As to Allison's claim for maintenance, Michael stated that nothing had changed since the entry of the order denying her motion for temporary maintenance (she "failed to heed the Court's suggestion that she is underemployed."). And following the decree, she would also retain as an asset at least a one-third share in the marital residence. Regarding the division of property, specifically as to the marital residence, Michael "would simply have each party maintain his/her share as set out in the record title," noting that there was no debt associated with it. Michael also had property that had been gifted to him by his parents, including a house and undeveloped property on the lake. He requested that the court find that Allison had no claim to the latter properties pursuant to KRS 403.190(2).

The family court held the trial on October 15, 2021, during which it heard testimony and arguments from both Michael and Allison regarding the

contested issues, including property division, child custody and support, and maintenance.

Through his testimony on direct examination, Michael introduced the deed to the marital residence without objection from Allison. The deed listed Allison, Mr. Leslie, and Michael as the grantees "for their joint lives with remainder in fee simple to the survivor of them[.]" Michael requested that the court find that he had an undivided, one-third ownership interest in the marital residence with Allison and Mr. Leslie. On cross-examination, Michael agreed that Mr. Leslie had purchased the marital residence via a check. When asked if he and Allison had agreed to pay Mr. Leslie back the purchase price, counsel for Michael objected, arguing that the statute of frauds and Allison's failure to join Mr. Leslie to the case precluded this evidence. Upon questioning by the court, counsel for Allison stated that she did not have a contract that established any agreement to repay Mr. Leslie for the property. The court then disallowed all questioning "on this" as it violated the statute of frauds.

During Allison's direct examination, her counsel mentioned the 2020 motion for child support and maintenance, and she attempted to elicit testimony related to whether Michael had ever assisted Allison with her monthly bills. Michael objected based upon relevance, which the court sustained. The court then instructed counsel to move on as it had already addressed the matter. On cross-

examination, Allison admitted that there had been no change in her economic condition since the case began.

In her closing argument, counsel for Allison argued that she was entitled to maintenance based on Michael's failure to assist with any household bills after he moved out and the disparity in the salaries she and Michael earned. She had a one-third interest in the marital property, which totaled about $56,000.00 based upon the purchase price, and there were really no other assets from which the court could award her funds. Based upon her age of 50, Allison was not able to return to school and obtain a higher degree. She had had to borrow money from her father to pay the bills. And, based upon the amount he earned, Michael was able to pay maintenance.

In his closing argument, counsel for Michael disputed Allison's claim for maintenance. In the March 2021 order, the court specifically found that Allison was underemployed, and it set child support at $562.31 per month at that time. Allison failed to introduce any evidence at the final hearing that would change the court's original opinion, specifically based upon her testimony that nothing had changed with regard to her finances. Regarding the marital residence, Michael, Allison, and Mr. Leslie were each a one-third owner of the property. No one had joined Mr. Leslie, meaning that there could be no adjudication of his rights with

respect to that property. And the statute of frauds would preclude any argument about a debt that needed to be repaid. The court took the matter under submission.

The family court entered its findings of fact, conclusions of law, judgment, and decree of dissolution in February 2022, noting that it had reviewed the evidence presented during the final hearing as well as in the prior hearings that addressed the *pendente lite* motions. The findings relevant to these appeals are as follows:

> 12. [Allison] has requested the Court award rehabilitative maintenance based on the statutory guidelines. The Court previously addressed and denied temporary maintenance.

> 13. The parties agree that the marital residence (169 Dublin Circle 40229) is owned jointly with survivorship by them and by [Allison's] father, Ron Leslie, who was not joined in this action by either party. The Court has no jurisdiction over Ron Leslie or his property. There is no dispute that Mr. Leslie's funds were used to purchase the property and there is no written agreement obligating the repayment of some or all of that expense to him from the parties.

In its conclusions of law, the court set forth the law applicable to this case, including custody and maintenance. In particular, the court stated:

> 1. The Court has jurisdiction of the subject matter and the parties with the exception that it has jurisdiction over the parties' interest in the marital interest only insofar as the parties' (not Mr. Leslie) interest is concerned.

> . . . .

-10-

> 5. The Court is required by KRS 403.190 to divide marital property "in just proportions considering all relevant factors . . . ."  A "just" division of marital property under [the] statute governing disposition of property is not necessarily an equal division.  [*Cobane v. Cobane*, 544 S.W.3d 672 (Ky. App. 2018).]

In the decree, the court dissolved the marriage and granted the parties joint custody of the child.  It reserved its ruling on parenting time, continued the previously set child support (but reserved reassessment once the parenting time schedule had been set), and ordered Michael to pay 50% of the child's volleyball expenses.  The court awarded Allison the Infiniti SUV, with the remainder of the vehicles awarded to Michael.  Each party was awarded the bank accounts held in his or her name, and they were to divide and close jointly held accounts.  Pension and retirement accounts accumulated during the marriage were also to be divided equally.  Regarding the marital residence, the Court ordered:

> 6. [Allison] is awarded [Michael's] interest in the marital residence and shall have prepared a quit claim deed reflecting this award which [Michael] shall execute upon receipt.  The Court cannot order the sale of the property because neither party joined Ron Leslie to this action and the Court has no jurisdiction over Mr. Leslie.

Finally, the court denied Allison's request for maintenance without elaboration.

Michael timely filed a motion to alter, amend, or vacate pursuant to Kentucky Rules of Civil Procedure (CR) 59.05, or, alternatively, for a new trial related to the marital residence pursuant to CR 59.01.  Michael sought specific

findings as to how the court divested him of his interest in the marital residence, or a new trial on that issue. He had asserted that the court could not fully adjudicate the issue of the marital residence as Mr. Leslie was not a party, and he therefore sought to leave the parties as co-tenants in the property. Michael stated:

> Had the Court taken proof on the issue [Michael] would have testified that multiple contributions were made from the joint efforts of the parties. From [Michael] the Court would have heard the parties paid significant sums, approximately [$43,000.00],[2] to Leslie. Significant improvements were made to the home, a new HVAC system, renovation of two bathrooms, and installation of built-in shelving.

Michael contended that the court divested him of his interest in the marital residence without stating a basis for doing so, noting that neither party had asserted a non-marital interest in it. Giving him nothing for the marital residence, in light of the significant marital contributions, he argued, constituted a clear abuse of discretion. "Because the Court heard no proof on improvements made to the home, no analysis was made on whether the asset improved in value based on the joint efforts of the parties." The court would need to make specific findings if it believed the property was non-marital or a gift (or something else). He requested that the court vacate paragraph 6 in the judgment. Alternatively, Michael suggested that the court should vacate that paragraph and order the parties to either

---

[2] Michael provided this amount in an affidavit filed shortly after he filed this motion.

amend the petition or file a third-party complaint to join Mr. Leslie. The parties would then be able to conduct discovery, and the court could hold a new trial on the marital residence, although Michael noted that there were significant problems with KRS 371.010 (the statute of frauds).

Several months later, Michael filed a notice showing payments in the amount of $23,100.00 that had been made via check to Mr. Leslie toward the marital residence. Allison moved to strike this notice as proof had closed at the end of the October 2021 hearing and the judgment had been entered in February. In a calendar order, the court stated that it could not discern the purpose for placing the documents into the casefile. The court then held a status hearing in January 2023. After hearing arguments from the parties, the court permitted Allison to file a response to Michael's post-judgment motions, and it denied the motion to strike, but it noted that "the tendered documents are not exhibits until admitted to the Court as such by the parties or during [an] evidentiary hearing."

In her response to Michael's post-judgment motion, Allison stated that she joined his motion for a new trial, as long as the court would also reconsider all of the claims and issues, including her claim for maintenance that the court had denied.

In February 2023, the family court entered an order denying Michael's motions to alter, amend, or vacate, or for a trial related to the marital

residence. The court found that Michael "failed to provide adequate support to sustain the motions." These appeals now follow, in which Michael seeks review of the assignment of his interest in the marital residence to Allison, and Allison seeks review of the decision not to award her maintenance in the event Michael is successful in his appeal.

Before we reach the merits of the appeals, we shall consider Allison's motion to strike Michael's reply/cross-appellee brief, which was passed to the merits panel. She argues that his brief should be stricken as nonresponsive to her appellee/cross-appellant brief, because his counterstatement of the facts was argumentative and did not contain sufficient citations to the record, and because he included a copy of the *pendente lite* order regarding child support and maintenance along with a child support calculation form to which he did not refer in his brief. Based upon Michael's response to the motion and our review of the briefs, we find no merit in Allison's motion and therefore deny it.

Turning to the merits, we shall first set forth our applicable standard of review. CR 52.01 provides the general framework for the family court as well as appellate review.

> In all actions tried upon the facts without a jury or with
> an advisory jury, the court shall find the facts specifically
> and state separately its conclusions of law thereon and
> render an appropriate judgment[.] . . . Findings of fact,
> shall not be set aside unless clearly erroneous, and due

regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses.

*Id.*; *see also Moore v. Asente*, 110 S.W.3d 336, 354 (Ky. 2003) (footnote omitted) (An appellate court may set aside a lower court's findings made pursuant to CR 52.01 "only if those findings are clearly erroneous.").

The *Asente* Court defined substantial evidence as:

"[S]ubstantial evidence" is "[e]vidence that a reasonable mind would accept as adequate to support a conclusion" and evidence that, when "taken alone or in the light of all the evidence, . . . has sufficient probative value to induce conviction in the minds of reasonable men." Regardless of conflicting evidence, the weight of the evidence, or the fact that the reviewing court would have reached a contrary finding, "due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses" because judging the credibility of witnesses and weighing evidence are tasks within the exclusive province of the trial court. Thus, "[m]ere doubt as to the correctness of [a] finding [will] not justify [its] reversal," and appellate courts should not disturb trial court findings that are supported by substantial evidence.

*Id.* (footnotes omitted).

In his appeal, Michael contests the family court's division and assignment of property. KRS 403.190(1) provides that the court must "divide the marital property . . . in just proportions considering all relevant factors[,]" including each spouse's contribution to its acquisition, the value of property assigned to each spouse, the duration of the marriage, and the economic circumstances of each spouse when the division becomes effective. We review a

-15-

family court's division of marital assets for abuse of discretion. *Young v. Young*, 314 S.W.3d 306, 308 (Ky. App. 2010). Specifically, Michael argues that the family court failed to follow KRS 403.190 in awarding Allison his share of the marital residence. We agree.

Michael asserts that the family court failed to indicate any reasoning or specific facts that would support its decision with regard to the marital residence. Our review of the record and orders confirms this assertion, and we disagree with Allison's argument that he waived this argument by his objection. Michael introduced the deed to the marital residence only to establish that he had an undivided one-third interest in the property; he merely requested that each party retain his or her interest. Other than the value listed on the deed at the time of the purchase in 2013, there was no testimony or documentary evidence introduced about the current value of the marital residence,[3] and the court disallowed any testimony related to the payment of money to Mr. Leslie. In her pre-trial memorandum, Allison sought an award of the marital residence so that she could live there with the child. She did not know the exact value of the marital residence, but she suggested that it would be an equitable trade if Michael were to keep his other (non-marital) property. We also note that Allison did not object to

---

[3] We note that Michael listed an increased value for the marital residence in his financial disclosure.

-16-

Michael's post-decree motion to alter, amend, or vacate, other than to ask the court to reconsider the denial of her request for maintenance if that award were to be vacated.

In the decree, the family court's findings with regard to the marital residence are sparse. The court found that it was jointly owned by Michael, Allison, and Mr. Leslie (over whom the court did not have jurisdiction), and that the funds used to purchase the property came from Mr. Leslie. And while the court properly cited KRS 403.190 and stated that it must consider all relevant factors in dividing marital property, it did not discuss any of the relevant factors and how they applied in this case to justify its award of Michael's interest to Allison. The court properly recognized that it could not order the sale of the marital residence, which neither Michael nor Allison requested.

In her brief, Allison attempts to justify the family court's award by suggesting that it had done so instead of awarding her maintenance. She points out the 16-year marriage, differences in their earning ability, that the child lives primarily with her in the marital residence, and that she had only requested $1,000.00 per month in maintenance. If she had received 60 months of maintenance, that would have been just over the value of each title holder's interest in the marital residence, which was $56,000.00 at the time of the purchase. She also pointed out that the family court did not consider the actual value of the other

marital assets when it divided those. Based on the totality of the evidence, Allison argued the award was not an abuse of discretion, citing *Deleo v. Deleo*, 533 S.W.3d 211, 217 (Ky. App. 2017) (in determining whether a continuance should be granted, the court held, "When each factor is applied and when the totality of the circumstances is considered, we conclude the family court abused its discretion."). Allison also asserts that CR 52.01 does not require a court to explain its awards.

We disagree with Allison's arguments. Here, the family court's decree had no findings at all related to the marital residence – a large asset – that would support its award, making its award both arbitrary as it was not supported by substantial evidence and an abuse of discretion. The court did not make any findings regarding the value of the property, either current or past, that would permit it to make a just division of the marital property as a whole. Likewise, the court did not make any findings related to the relevant factors set forth in KRS 403.190(1), other than reciting the factors and recognizing that a just division did not necessarily require an equal division, citing *Cobane v. Cobane*, 544 S.W.3d 672, 684 (Ky. App. 2018).

For these reasons, we hold that the family court improperly awarded Michael's interest in the marital residence to Allison and denied his motion to alter, amend, or vacate. We must therefore reverse the portion of the family court's decree awarding Michael's interest in the marital residence to Allison.

Turning to Allison's cross-appeal, she asserts that if Michael prevails on his direct appeal regarding the marital residence, she should be entitled to reconsideration of her maintenance request. Michael opposes Allison's argument because she failed to request additional findings pursuant to CR 52.04 and the record does not support an award of maintenance.

KRS 403.200 details the considerations a court must make when deciding whether a spouse is entitled to an award of maintenance. The court must first determine whether the spouse meets the threshold for maintenance, which requires proof that the spouse, "(a) [l]acks sufficient property, including marital property apportioned to him, to provide for his reasonable needs; and (b) [i]s unable to support himself through appropriate employment[.]" KRS 403.200(1). If that threshold is met, the court may award maintenance "in such amounts and for such periods of time as the court deems just" after considering all relevant factors as set forth in KRS 403.200(2):

> (a) The financial resources of the party seeking maintenance, including marital property apportioned to him, and his ability to meet his needs independently, including the extent to which a provision for support of a child living with the party includes a sum for that party as custodian;
>
> (b) The time necessary to acquire sufficient education or training to enable the party seeking maintenance to find appropriate employment;

(c) The standard of living established during the marriage;

(d) The duration of the marriage;

(e) The age, and the physical and emotional condition of the spouse seeking maintenance; and

(f) The ability of the spouse from whom maintenance is sought to meet his needs while meeting those of the spouse seeking maintenance.

Whether to award maintenance "is a matter that comes within the discretion of the trial court." *Browning v. Browning*, 551 S.W.2d 823, 825 (Ky. App. 1977).

We agree with Michael that, regardless of whether he is successful in his appeal, the record does not support Allison's claim for maintenance. To be entitled to maintenance, Allison had to establish, pursuant to KRS 403.200(1), that she lacked sufficient property – including marital property apportioned to her – to provide for her reasonable needs AND that she was unable to support herself through appropriate employment. "Both sections of the statute must be satisfied before the family court may award maintenance." *Shafizadeh v. Shafizadeh*, 444 S.W.3d 437, 446 (Ky. App. 2012) (citing *Atwood v. Atwood*, 643 S.W.2d 263, 265 (Ky. App. 1982)). She failed to do so.

While there is some question regarding the first prong based upon our reversal of the decree related to the marital residence, Allison has failed to establish that she is unable to support herself through appropriate employment.

The record establishes that she works as a dental hygienist three days, or 18 to 22 hours, per week earning $29.50 per hour. During the *pendente lite* proceedings, the family court specifically held that Allison chose to be underemployed and imputed income to her when calculating child support. And in the same order it stated that "[Allison] did not offer substantive testimony or evidence at the hearing of the [temporary maintenance] motion from which the Court could find in her favor." At the final hearing Allison based her claim for maintenance on the disparity in their income and her age. However, she admitted that her economic circumstances had not changed since the *pendente lite* hearing, when the family court determined that she was voluntarily underemployed. Therefore, we cannot hold that Allison has established that she was unable to support herself through appropriate employment. Accordingly, we hold that the family court did not abuse its discretion in denying Allison's request for maintenance.

For the foregoing reasons, the portion of the judgment of the Bullitt Circuit Court awarding Michael's interest in the marital residence to Allison is reversed, and this matter is remanded so that the parties may properly adjudicate the marital residence. The family court's ruling related to maintenance is affirmed.

ALL CONCUR.

ENTERED: _July 12, 2024_____        _____
                                    JUDGE, COURT OF APPEALS


BRIEFS FOR APPELLANT/CROSS-      BRIEFS FOR APPELLEE/CROSS-
APPELLEE:                        APPELLANT:

J. Scott Wantland               William D. Tingley
Shepherdsville, Kentucky        Louisville, Kentucky