RENDERED: FEBRUARY 20, 2026; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2025-CA-0632-MR

CARL LEMONT HAZELWOOD                                                    APPELLANT

v.
APPEAL FROM MARION CIRCUIT COURT
HONORABLE SAMUEL TODD SPALDING, JUDGE
ACTION NO. 19-CI-00287

SHAWNA EVETTE HAZELWOOD                                              APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: CALDWELL, COMBS, AND EASTON, JUDGES.

EASTON, JUDGE: The Appellant (Carl) challenges the Marion Circuit Court's

division of Appellee's (Shawna) retirement account, which it found to be marital

property. Having reviewed the record and the applicable law, we determine the

circuit court did not abuse its discretion and affirm.

## FACTUAL AND PROCEDURAL HISTORY

This is the second appeal involving the division of Shawna's

retirement account. In this Court's prior Opinion, we reversed and remanded the Marion Circuit Court's order addressing this retirement account with instructions to determine the actual value of Shawna's account, the marital portion of the account, and to apportion the marital share between the parties. Because much of the background of the parties' marriage and divorce was outlined in our prior Opinion,[1] we will discuss only the facts and testimony necessary for this appeal.

Shawna began working at Toyota in Georgetown, Kentucky, in June 1997, prior to the parties' marriage. Shawna and Carl married on August 26, 2000, and divorced on February 10, 2021. Shawna worked consistently at Toyota throughout the parties' entire marriage.

The circuit court held the hearing required by our remand of this case on May 13, 2025. At this hearing, the parties stipulated that the value of the account at the time of the dissolution of the marriage was $262,913.76, minus an outstanding loan balance of $15,397.12. This left the value of the account at the time of dissolution as $247,516.64. The circuit court heard testimony that a merger occurred at Toyota in 2017 which led to a change in the company managing the retirement accounts. Because of this, there were no records available showing employee contributions to the retirement accounts prior to 2017. Counsel

---

[1] *See Hazelwood v. Hazelwood*, No. 2022-CA-0817-MR, 2024 WL 3381405 (Ky. App. July 12, 2024).

for both parties agreed that this was accurate, as both had attempted to obtain this information.

Shawna testified that she began contributing to her retirement account immediately when she began her employment in 1997 before the marriage. She stated Toyota matched contributions at a maximum rate of 6%. But she was unable to recall how much she contributed to the retirement account prior to the marriage, and she did not have any documentation that would provide that information. Shawna further testified she stopped contributing to the retirement account prior to the parties' divorce, but she also did not recall precisely when that occurred.

Shawna stated her drive to work was approximately one and one-half hours each way, from Lebanon to Georgetown, leading to a three-hour daily commute. She further testified that during the parties' marriage, she handled all the finances of the family. She stated that Carl's employment was generally seasonal, so he wasn't always able to work. She told the circuit court that he contributed approximately $300 per week to the family's finances, and she handled the remainder. She also spoke of various terms of incarceration that Carl had during the marriage, which she estimated added up to about a year in total. Yet, Shawna conceded that, during Carl's incarceration, he often had work release and was able to continue to contribute financially.

Shawna testified as to the parties' bills during the marriage. She was only able to estimate what many of the bills were, but she testified that she made more and so contributed more. She also testified to the various loans taken out against her retirement account on several occasions. There were four loans, all of which were incurred during the parties' marriage. Shawna stated that all of those loans went to cover family expenses, such as repairs or vacations. Other than the balance that remained at the time of the parties' divorce, the loans were all repaid by direct deduction from Shawna's paycheck.

Carl did not testify at the hearing.

The circuit court issued an order on May 16, 2025, which ruled that Shawna had been unable to prove by clear and convincing evidence that any portion of the retirement account was her non-marital property. Thus, the entire value was marital in nature. The circuit court then ordered the retirement account to be divided 60% to Shawna and 40% to Carl. It justified this decision by finding that Shawna alone had contributed to the account. Additionally, Shawna commuted three hours daily and was responsible for handling the family's finances and household during the marriage. Carl appealed, arguing that the circuit court abused its discretion in not dividing the account equally.

**STANDARD OF REVIEW**

Property distribution awards in dissolution of marriage actions are

-4-

reviewed for abuse of discretion. *McGregor v. McGregor*, 334 S.W.3d 113, 118-19 (Ky. App. 2011). "The test for an abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound reasonable principles." *Penner v. Penner*, 411 S.W.3d 775, 779-80 (Ky. App. 2013). Appellate review of a trial court's factual findings is governed by the clearly erroneous standard; factual determinations supported by substantial evidence will not be disturbed. *Truman v. Lillard*, 404 S.W.3d 863, 868 (Ky. App. 2012). In evaluating abuse of discretion, this Court reviews legal conclusions applied by the trial court de novo. *Ehret v. Ehret*, 601 S.W.3d 508, 511 (Ky. App. 2020).

## ANALYSIS

As an initial matter, we must first address Shawna's failure to file an Appellee Brief. Under RAP[2] 31(H)(3),

> If the appellee's brief has not been filed within the time allowed, the court *may*: (a) accept the appellant's statement of the facts and issues as correct; (b) reverse the judgment if appellant's brief reasonably appears to sustain such action; or (c) regard the appellee's failure as a confession of error and reverse the judgment without considering the merits of the case.

(Emphasis added.)

---

[2] Kentucky Rules of Appellate Procedure.

On the other hand, Carl's brief is not entirely compliant with our appellate rules, either. His brief does not contain a preservation statement.

> The purpose of the preservation statement rule is to assure the reviewing court that the issue was properly presented to the trial court, and therefore, is appropriate for . . . consideration. While this procedural rule preserves judicial resources, it also serves an important substantive purpose: the fact and manner of preservation generally determines the applicable standard of review. Furthermore, it is neither the function nor the responsibility of this Court to scour the record to ensure an issue has been properly preserved for appellate review.

*Gasaway v. Commonwealth*, 671 S.W.3d 298, 311 (Ky. 2023).

"The decision as to how to proceed in imposing such penalties is a matter committed to our discretion." *Roberts v. Bucci*, 218 S.W.3d 395, 396 (Ky. App. 2007). Because the record and the issues involved are uncomplicated, involving a single hearing with a single matter to be decided, and was governed by directions on remand from this Court, we decline to impose any penalty to either side.

The disposition of property in a dissolution of marriage action is governed by KRS[3] 403.190. This statute reads, in relevant part:

> (1) In a proceeding for dissolution of the marriage . . . , the court shall assign each spouse's property to him. It also shall divide the marital property without regard to

---

[3] Kentucky Revised Statutes.

marital misconduct in just proportions considering all relevant factors including:

(a) Contribution of each spouse to acquisition of the marital property, including contribution of a spouse as homemaker;

(b) Value of the property set apart to each spouse;

(c) Duration of the marriage; and

(d) Economic circumstances of each spouse when the division of property is to become effective, including the desirability of awarding the family home or the right to live therein for reasonable periods to the spouse having custody of any children.

(2) For the purpose of this chapter, "marital property" means all property acquired by either spouse subsequent to the marriage . . . .

"Thus, in dissolution of marriage actions, a trial court's division of the parties' property requires a three-step process: (1) the trial court first characterizes each item of property as marital or nonmarital; (2) the trial court then assigns each party's nonmarital property to that party; and (3) finally, the trial court equitably divides the marital property between the parties." *Travis v. Travis*, 59 S.W.3d 904, 908-09 (Ky. 2001) (internal footnotes omitted).

Carl argues the circuit court erred in its uneven division of Shawna's retirement account. He spends much of his brief arguing that the circuit court presumed that a portion of Shawna's retirement account was non-marital. Carl specifically takes issue with a statement from the circuit court's order that indicates

a belief that Shawna did in fact make pre-marital contributions to the account. He

argues it was error to take this into consideration. But the circuit court clearly

concluded that the entire account was marital, stating:

> The Court is persuaded by the case law submitted by the
> Respondent of <u>Ford v. Perkins</u>, 382 S.W.3d 821 (Ky.
> 2012), where the Kentucky Supreme Court stated that in
> order to assert a non-marital interest, the party claiming
> such much [sic] prove the non-marital aspect by clear and
> convincing evidence. The Court has no doubt the
> Petitioner began to contribute some amount to her
> retirement and 401K at Toyota upon beginning
> employment. However, there is no evidence, through no
> fault of either party, about the amount of contributions
> prior to marriage. This Court cannot guess as the legal
> standard requires the Petitioner to prove the amount of
> her non-marital interest by clear and convincing
> evidence. She has failed to do so. Accordingly, the
> Court finds the Petitioner's retirement savings plan with
> a value of $247,516.64 is a marital asset.[4]

The circuit court committed no error. Even though Shawna clearly

had made non-marital contributions to this pension for over three years, she could

not quantify this amount. In these circumstances, the circuit court properly

followed the law and found the entire account to be marital, which finding was to

Carl's benefit.

The circuit court went further in its separate analysis of why it deemed

a 60/40 division of this marital asset equitable:

---

[4] Circuit Court Order of May 16, 2025, TR at page 199.

-8-

In reaching this conclusion, the Court is persuaded by the Petitioner commuting three hours each day to and from work at Toyota and solely contributing to the retirement savings plan. The Petitioner was also tasked during the marriage with paying all marital expenses and running the household, subject to the Respondent reimbursing her $1,300 monthly.[5]

Carl argues these factors "relied upon by the court do not justify an unequal division of the marital property – yet show the trial court's continuous bias against the Appellant to evade an equal distribution despite no substantial evidence."[6] We disagree.

"[A] 'just' division is not necessarily an equal division. And as noted above, the trial court has broad discretion to divide marital assets, and its determination of what constitutes a just division will not be disturbed absent an abuse of that discretion." *Cobane v. Cobane*, 544 S.W.3d 672, 684 (Ky. App. 2018) (citations omitted). There is no statutory basis for the argument that the marital estate should be divided equally. *Wood v. Wood*, 720 S.W.2d 934, 934 (Ky. App. 1986).

"'Just proportions' does not mean that the property must be equally divided, but only that a consideration of the factors in KRS 403.190 has been made." *Muir v. Muir*, 406 S.W.3d 31, 36 (Ky. App. 2013). The circuit court did

---

[5] *Id.*, TR at page 200.

[6] Appellant Brief, Page 17.

consider these factors.  The statute states, "It also shall divide the marital property without regard to marital misconduct in just proportions, considering all relevant factors, *including* . . . ."  KRS 403.190 (emphasis added).  There is no requirement that the listed factors are the *only* factors a court may consider when making a division of marital property, just that those factors must be considered.  The fact that the circuit court considered other factors, such as Shawna's commute, the division of household labor, and who paid the bills, is not an abuse of discretion.

Overall, the difference in equity awarded to the parties was not extreme.  Shawna was awarded 60%, or $148,509.98, while Carl was awarded 40%, or $99,006.66.  Similar percentages of awards have been upheld.  *See Stipp v. St. Charles*, 291 S.W.3d 720 (Ky. App. 2009) (57% and 43%).  We cannot conclude the circuit court abused its discretion under these circumstances.

**CONCLUSION**

The circuit court properly deemed the retirement account marital property, and it did not abuse its discretion in its division of the account.  The Marion Circuit Court is AFFIRMED.

ALL CONCUR.

BRIEF FOR APPELLANT:                    NO BRIEF FILED FOR APPELLEE.

John A. Elder, IV
Lebanon, Kentucky